PEARSON, J.

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| SUSAN GLOWE, | ) |
| | ) CASE NO. 4:20CV1207 |
| Plaintiff, | ) |
| | ) |
| v. | ) JUDGE BENITA Y. PEARSON |
| | ) |
| MERCY HEALTH YOUNGSTOWN, | ) |
| LLC, *et al.*, | ) **MEMORANDUM OF OPINION** |
| | ) **AND ORDER** |
| Defendants. | ) [Resolving ECF No. 29] |

Pending is Defendant Mercy Health Youngstown, LLC's Motion for Summary Judgment (ECF No. 29). The Court has been advised, having reviewed the record, the parties' briefs, and the applicable law. For the reasons set forth below, the motion is granted.

### I. Stipulated Facts

The stipulated facts[1] are as follows:

1. Plaintiff Susan Glowe began as a Registered Nurse Team Leader ("Lead") in Urology for Defendant on February 19, 2018.

2. An RN Lead serves several functions, including acting as a clinical leader in the Nursing Department to ensure that each patient receives quality individualized care and assuming responsibility for assisting with the oversight of daily operations of the Nursing unit. The Lead also collaborates with the nurse manager in maintaining unit operations and with other healthcare team members to provide safe appropriate patient care.

---

[1] *See* Parties' Stipulated Facts (ECF No. 26).

(4:20CV1207)

3. The Lead job requires a nurse to have excellent interpersonal skills, to be a role model of clinical excellence, and to abide by and enforce codes of conduct and policies using effective and constructive communication skills.

4. As a constant duty of her Lead position, which was defined as 67% to 100% of her workday under Defendant's policy, Plaintiff was required to work overtime as assigned to meet operational/patient care demands.

5. Plaintiff received and read Defendant's policies, including its Code of Conduct Policy and Standards of Performance.

6. On June 12, 2018, Plaintiff, in addition to working her normal day shift between 6:00 a.m. and 3:00 p.m., was scheduled to work a "Red Late" assignment.

7. Plaintiff's work schedule was made six weeks in advance and the Red Late assignment was scheduled and assigned at least two weeks in advance.

8. On June 13, 2018, Tamara Antonaccio, R.N. authored a final written warning (ECF No. 29-10) as discipline for Plaintiff's misconduct on June 12, 2018 and removed her from her Lead position.

9. Antonaccio presented the June 13, 2018 discipline to Plaintiff on June 14, 2018 during a meeting with Lori DeNiro and Joe Smaldino, Human Resource Representatives of Defendant.

10. Plaintiff was upset about the discipline and Antonaccio directed her to Life Matters, a service provided by Defendant to help employees cope with stress.

11. On July 2, 2018, Plaintiff made an overture to reconnect with her former employer, Southwoods Health.

(4:20CV1207)

12. Southwoods offered and Plaintiff accepted a registered nurse job at Southwoods on October 24, 2018.

13. Southwoods paid Plaintiff $27.49 an hour, which is a reduction from her $34.50 an hour pay at Mercy.

14. Plaintiff resigned from Mercy immediately after receiving Southwoods' offer on October 24, 2018.

15. On her employment application with Southwoods, Plaintiff prohibited the hospital from contacting Defendant as a reference.

16. On March 22, 2019, Plaintiff filed a discrimination charge with the Equal Employment Opportunity Commission alleging the same claims outlined in her complaint in this lawsuit.

17. As of March 2021, Plaintiff demands $462,000 in damages, and attorney's fees and costs.

## II. Background

As a Registered Nurse Team Leader, Plaintiff was in a leadership position in the operating room at Mercy and was responsible for handling emergent cases. Even though she knew and understood at least two weeks in advance that she was scheduled to work a late shift on June 12, 2018, and that she had food both in her locker and in her car to sustain her if she had to work over, she became angry, verbally belligerent, and insubordinate toward her supervisor, Antonaccio, and abandoned her shift because the nurse who was supposed to relieve her of duty

(4:20CV1207)

failed to appear. When Antonaccio learned that Plaintiff intended to abandon her shift and called the operating room to talk to her about it, Glowe stated to Antonaccio:

> I have been here since 6:30 am and I am tired. I am not going to do one more case tonight. I will finish this case, then I am leaving. I will not start one more case tonight. I will accept any consequences that comes along with that. I don't care. . . . I am sick and tired of this shit. Someone called off, you did not do your job by filling that position and you are punishing me by shitting on me and making me stay. . . . I really don't give a shit what you think about me. I am out of here as soon as this case is over.

Employee Chronological Record (ECF No. 29-5); *see also* Deposition of Tamara Antonaccio, R.N. (ECF No. 37-2) at PageID #: 1224:18-1226:4; 1239:17-1240:9. When Plaintiff was asked about these statements during her discovery deposition, she testified as follows:

> Q  So let's take these one sentence at a time. Did she -- on June 12th, did Miss Antonaccio ask you what was going on? Did she get ahold of you and ask you what was going on?
>
> A  I did take a call from her in the OR.
>
> Q  Did you report to her that you had been there since 6:30 a.m. and that you were tired?
>
> A  I don't have -- I don't have a clear recollection of that conversation at the time.
>
> Q  Did you say you were not going to do one more case that night?
>
> A  I don't have a clear recollection of everything that happened in that conversation.
>
> Q  Did you say, "I will finish this case and then I'm leaving"?
>
> A  I just don't have a clear recollection of what all was said there.
>
> Q  Do you recall saying, "I will not start one more case tonight"?

4

(4:20CV1207)

A     And I'll repeat, I don't have a clear recollection of all that was said in that conversation.

Q     Did you say, "I will accept any consequences that comes along with that. I don't care"?

A     And I'll say I don't have a clear recollection of what was said there.

Q     Did you also state that, "I am sick and tired of this shit"?

A     I don't have a clear recollection of that conversation.

Q     Did you say, "Someone called off, you did not do your job by filling that position and you are punishing me by shitting on me and making me stay"?

A     And I'll say I don't have a clear recollection of that conversation.

Q     So can you deny that any of this conversation occurred though, if Miss Antonaccio testified that you did make these statements?

A     I don't have a clear recollection. I don't have enough of a recollection to deny it or to say that it was said.

Q     Do you have any reason to believe that Miss Antonaccio would be making up the incident in --

A     I do not have that -- I do not --

         MR. GOLD: Let him complete the sentence.

A     I'm sorry.

Q     Do you have any reason to believe that she would be making up this conversation and your comments that's in this incident comments section of Deposition Exhibit H?

A     I don't have any reason to think they would make something up, but I don't have any recollection of -- a clear recollection of what was said.

(4:20CV1207)

> Q In that second paragraph it also said, "You interrupted me to add, 'I really don't give a shit what you think about me. I am out of here as soon as this case is over'." Do you recall ever saying that?
>
> A I don't have a clear recollection of the conversation.
>
> Q But can you deny that that was said if she testifies that you did say that?
>
> A Say that again.
>
> Q Could you deny that you said those comments if she testifies that you did say those comments?
>
> A I can say that I don't recall it.
>
> Q In the last sentence it says, "Susan took her patient to recovery, then clocked out at 8:38 p.m." Is that correct?
>
> A I did recover -- I did take a patient to recovery. I don't know if that's what time it was. I don't know about the time.
>
> Q So just so the record is clear, with regard to Deposition Exhibit H, and the narrative that is under incidents and comments, you have no recollection of whether or not you ever made these statements?
>
> A I have an unclear recollection of what was said in that conversation.

Deposition of Susan Glowe (ECF No. 37-5) at PageID #: 1484:2-1487:9. Moreover, Plaintiff does not dispute she made the insubordinate statements and agrees she "may very well have" made them. Affidavit of Susan Glowe (ECF No. 35-1) at PageID #: 946, ¶25.

On June 13, 2018, Antonaccio authored a final written warning (ECF No. 29-10) as discipline for Plaintiff's misconduct on June 12, 2018 in violation of Defendant's policies and removed her from the Urology Team Lead position. *See* ECF No. 26 at PageID #: 174, ¶ 8. Plaintiff was relegated to the schedule, duties, and wage of a circulating nurse.

(4:20CV1207)

Plaintiff advised Defendant she is a diabetic when she completed her pre-employment physical. *See* Health History Questionnaire (ECF No. 35-11).[2] She agrees, however, that Antonaccio did not know about her diabetes until Glowe told her on June 14, 2018 – the day *after* Antonaccio decided the discipline. Plaintiff claims that during the June 14, 2018 meeting she "cried out that she was a diabetic, believing they already knew that, but as it turned out, they didn't." ECF No. 32 at PageID #: 921.

Plaintiff "contacted Atty. Gold and sought his advice," and "[h]e thought we needed to try to reverse the discipline under the principles of [the] ADA." Doc. 35-1 at PageID #: 951, ¶43. On June 22, 2018, Plaintiff submitted to Defendant a document entitled "Addendum to Susan Glowe Corrective Action Report of June 14, 2018" (ECF No. 29-6), in which she contends she presented her requests for an accommodation. Consistent with the Addendum (ECF No. 29-6 at PageID #: 889), Plaintiff testified during her deposition that she made only three requests for an accommodation: (1) rescission of the disciplinary action against her; (2) reinstatement of her Lead title and pay; and (3) reconsideration of her "shift situation." *See* ECF No. 37-5 at PageID #: 1529:6-1531:18, 1534:3-1537:13.

Shortly after Plaintiff submitted the Addendum (ECF No. 29-6 at PageID #: 889) to Defendant, she voluntarily went on medical leave and then resigned from Mercy and never returned to her position.

---

[2] Plaintiff's counsel is ordered to redact and refile ECF No. 35-11 no later than April 4, 2022 at 4:00 p.m. This document, submitted as an exhibit to the Memorandum in Opposition (ECF No. 32), is hereby restricted and shall not be made available online due to the exposure of a personal data identifier. *See* Local Rule 8.1. The Clerk of Court is hereby ordered to restrict access to ECF No. 35-11.

7

(4:20CV1207)

The Amended Complaint (ECF No. 23) alleges four claims[3] for violations of both the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, as amended by the ADA Amendments Act of 2008 ("ADAA"), PL 110-325, Sept. 25, 2008, 122 Stat 3553, and Ohio Rev. Code § 4112.02, which render discrimination against an employee based on disability illegal under federal and state law.[4] This is a failure-to-accommodate case. Defendant allegedly failed to reasonably accommodate Plaintiff, failed to engage in an interactive process to find a reasonable accommodation for her, and retaliated against her by failing to accommodate her. According to Plaintiff, "[t]he essential claim is simply one for disability discrimination[,] which is prohibited under the Americans With Disabilities Act and its Ohio counterpart." ECF No. 32 at PageID #: 915.

### III. Standard of Review

Summary judgment is appropriately granted when the pleadings, the discovery and disclosure materials on file, and any affidavits show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005). Fed. R. Civ. P. 56(c)(1)(a)

---

[3] Although Plaintiff alleges in one paragraph of the Amended Complaint that "[f]rom her viewpoint, the demotion and final written warning were the equivalent of a termination (*i.e.* a constructive discharge)," ECF No. 23 at PageID #: 150, ¶ 23, she never alleges any facts or claims that the discipline caused her to quit her position with Defendant.

[4] In deciding cases under § 4112.02, the Ohio Supreme Court has recommended that courts look to the ADA for guidance on the interpretation of Ohio's prohibition on disability discrimination. *See Columbus Civil Serv. Comm. v. McGlone*, 82 Ohio St.3d 569, 573 (1998).

8

(4:20CV1207)

requires a party requesting summary judgment in its favor or an opposing party "to go beyond the pleadings" and argument, *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986), and cite to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." The moving party must "show that the non-moving party has failed to establish an essential element of his case upon which he would bear the ultimate burden of proof at trial." *Guarino v. Brookfield Twp. Trustees.*, 980 F.2d 399, 403 (6th Cir. 1992).

Once the movant makes a properly supported motion, the burden shifts to the non-moving party to demonstrate the existence of genuine dispute. An opposing party may not simply rely on its pleadings. Rather, it must "produce evidence that results in a conflict of material fact to be resolved by a jury." *Cox v. Ky. Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995). The non-moving party must, to defeat the motion, "show that there is doubt as to the material facts and that the record, taken as a whole, does not lead to a judgment for the movant." *Guarino*, 980 F.2d at 403. In reviewing a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party when deciding whether a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970).

The United States Supreme Court, in deciding *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986), stated that in order for a motion for summary judgment to be granted, there must be no genuine issue of material fact. *Id.* at 248. The existence of some mere factual dispute

9

(4:20CV1207)

between the parties will not defeat an otherwise properly supported motion for summary judgment. *Scott v. Harris*, 550 U.S. 372, 380 (2007). A fact is "material" only if its resolution will affect the outcome of the lawsuit. In determining whether a factual issue is "genuine," the court must decide whether the evidence is such that reasonable jurors could find that the non-moving party is entitled to a verdict. *Id.* Summary judgment "will not lie . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* To withstand summary judgment, the non-movant must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First Am. Bank*, 916 F.2d 337, 342 (6th Cir. 1990). The existence of a mere scintilla of evidence in support of the non-moving party's position ordinarily will not be sufficient to defeat a motion for summary judgment. *Id.* (citing *Anderson*, 477 U.S. at 252).

"It is well settled that the non-moving party must cite specific portions of the record in opposition to a motion for summary judgment." *U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1191 (6th Cir. 1997); *see also* Fed. R. Civ. P. 56(c)(1). "[T]he court is not required to search the record for some piece of evidence which might stave off summary judgment." *Id.* It is also well settled that "[i]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) (quoting *Citizens Awareness Network, Inc. v. United States Nuclear Regulatory Comm'n*, 59 F.3d 284, 293-94 (1st Cir. 1995)).

(4:20CV1207)

## IV. Analysis

**A.  Defendant Was Not Required to Rescind Plaintiff's Discipline and Reinstate Her Lead Title and Pay as Reasonable Accommodations**

Although Plaintiff claimed during her deposition that she cannot remember making the statements attributed to her in the Employee Chronological Record (ECF No. 29-5), she "cannot defeat summary judgment merely by alleging that [s]he cannot recall events and discipline that explain the basis for the actions Defendant took." *Bass v. White Castle Sys., Inc.*, No. 1:09CV2516, 2014 WL 5516473, at *7 (N.D. Ohio Oct. 31, 2014) (Pearson, J.).

Plaintiff does not claim Defendant disciplined her because of her diabetes.[5] Rather, Plaintiff argues that Defendant's conduct in disciplining her and declining to rescind the discipline after she informed Antonaccio she had diabetes was extreme, outrageous, humiliating and a violation of federal and state disability discrimination laws because her diabetes made her do it, which renders her deserving of forgiveness.

---

[5] Defendant made its argument in the Motion for Summary Judgment (ECF No. 29 at PageID #: 772-74) that Plaintiff is not disabled based on the record at that time and after discovery was closed.  Defendant contends those facts in the record demonstrate Plaintiff is not disabled, including that she represented and demonstrated she could work all shifts and had never required an accommodation before June 12, 2018. *See Neely v. Benchmark Fam. Servs.*, 640 Fed.Appx. 429, 434-35 (6th Cir. 2016) ("Congress expressly chose [through the ADAA] to retain the 'substantially limits' modifier for 'one or more major life activities' ").  Plaintiff produced Affidavits from herself (ECF No. 35-1) and Dr. Michael DeRosa (ECF No. 35-3), her treating physician, that assert facts for the first time in opposition to summary judgment.  Plaintiff argues "taken as a whole," these affidavits "substantiate [her] contention that her diabetes is a disability." ECF No. 32 at PageID #: 925.  Defendant argues "[i]t is disingenuous for Glowe to rely on post-discovery affidavits." ECF No. 36 at PageID #: 1042.  The Court agrees.  Plaintiff has not designated anyone, including Dr. DeRosa, as an expert.  *See* Case Management Plan (ECF No. 19) at PageID #: 130-31, ¶ 11.

11

(4:20CV1207)

In order for an employer to be liable for disability discrimination, the decision-maker who took the adverse employment action must have had actual knowledge of the disability. *Nilles v. Givaudan Flavors Corp.*, 521 Fed.Appx. 364, 368 (6th Cir. 2013) (citing cases).  It is undisputed that Antonaccio, the individual decision-maker who disciplined Plaintiff, did not already actually know before June 13, 2018 that Plaintiff's disability caused the misconduct.  "She advised Mercy she was a diabetic when she completed her pre-employment physical and assumed that information had been passed on to the person who had hired her and who was the Nurse Manager of the OR, Ms. Antonaccio; *it was not*." ECF No. 32 at PageID #: 915 (emphasis added).  Moreover, it is undisputed that Antonaccio never received the results of any employee's pre-employment physicals, including Plaintiff's.  *See* ECF No. 37-2 at PageID #: 1185:4-1186:18.  Finally, Plaintiff agrees that "her belief that her supervisors were privy to her pre-employment physical and hence, her diabetic condition, was misplaced." ECF No. 32 at PageID #: 930.

Defendant was not required to rescind Plaintiff's discipline as a reasonable accommodation when Antonaccio subsequently learned that Plaintiff is a diabetic.  An employer is not required to forgive its employee and rescind discipline after it learns the employee's misconduct was caused by an alleged disability.  *See Yarberry v. Gregg Appliances, Inc.*, 625 Fed. Appx. 729, 740 (6th Cir. 2015).  "[T]he ADA does not protect employees from the consequences of violating conduct requirements even where the conduct is caused by the disability." *Id.* at 739 (quoting The Americans with Disabilities Act:  Applying Performance and Conduct Standards to Employees with Disabilities, 2008 WL 4786697, at *9 (Sept. 25, 2008).  In

12

(4:20CV1207)

other words, "[h]aving a disability . . . does not insulate an individual from adverse employment actions." *Sullivan v. River Valley Sch. Dist.*, 20 F. Supp.2d 1120, 1127 (W.D. Mich. 1998), *aff'd,* 197 F.3d 804 (6th Cir. 1999).

> *Ideally, employees will request reasonable accommodation before conduct problems arise, or at least before they become too serious. Although the ADA does not require employees to ask for an accommodation at a specific time, the timing of a request for reasonable accommodation is important because an employer does not have to rescind discipline (including termination) warranted by misconduct. Employees should not assume that an employer knows that an accommodation is needed to address a conduct issue merely because the employer knows about the employee's disability. Nor does an employer's knowledge of an employee's disability require the employer to ask if the misbehavior is disability-related.*

2008 WL 4786697, at *13 (italics in original; footnote omitted); *see also Lowes v. Baldwin*, No. 2:18-cv-537, 2019 WL 7290504, at *15 (S.D. Ohio Dec. 30, 2019) (relying on *Yarberry* and the above-quoted EEOC Guidance to find, "[p]ointedly, it is not a defense that [plaintiff] violated the Sick Leave Policy because she was absent due to her disability"), *aff'd*, No. 20-3078, 2020 WL 7974381 (6th Cir. Oct. 15, 2020).

According to Plaintiff, the case at bar is about using her diabetes as an excuse to forgive her misconduct and rescind her discipline. She readily admits she "contacted Atty. Gold and sought his advice," and "[h]e thought we needed to try to reverse the discipline under the principles of [the] ADA." ECF No. 35-1 at PageID #: 951, ¶43. Plaintiff argues that "[r]eturning [her] to her former position in light of the fact that her 'bad conduct' was caused by her disability was a reasonable request" and "[f]ailure to grant same violates the ADA." ECF No. 32 at PageID #: 933. Plaintiff, however, "is not looking for an 'accommodation' under the ADA, but a complete pardon . . . [which] the law does not require." *Bugg-Barber v. Randstad US, L.P.*, 271

13

(4:20CV1207)

F. Supp.2d 120, 131 (D.D.C. 2003) (citations omitted); *see also* *Walsh v. Andersen Consulting LLP*, No. 00 C 2743, 2000 WL 1809960, at *7 (N.D. Ill. Dec. 11, 2000) (holding that "[r]equesting an accommodation after an employer has made a legitimate decision to terminate does not entitle an employee to an accommodation" because "[a]n employer is not required to give an employee a second chance as an accommodation") (citing *Siefken v. Village of Arlington Heights*, 65 F.3d 664, 666 (7 th Cir. 1995)).

    **B.**    **Plaintiff Fails to Demonstrate She Otherwise Requested a Reasonable Accomodation**

With respect to Plaintiff's third purported request for an accommodation, *see* ECF No. 29-6 at PageID #: 889 and ECF No. 37-5 at PageID #: 1529:20-23, 1536:3-1537:13, Plaintiff offers no opposition to Defendant's arguments that (1) her statement about her "shift situation" was too vague to constitute a request for a reasonable accommodation, and (2) she did not otherwise identify or request anything that she did not already enjoy as a condition of her employment or that Defendant rejected. *See* ECF No. 29 at PageID #: 776-78. The only reference in the Memorandum in Opposition to "shift situation" is: "She suggested a review of the shift situation she was being placed as a reasonable accommodation. However, no one from Mercy ever contacted her or even read the memo as she later learned." ECF No. 32 at PageID #: 922. Antonaccio, however, testified to the contrary at her deposition that she read the post-discipline Addendum when she received it. ECF No. 37-2 at PageID #: 1264:19-1265:15. "[A] plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment." *Brown v. VHS of Mich., Inc.*, 545 Fed.Appx. 368, 372 (6th Cir. 2013) (citing *Hicks v. Concorde Career Coll.*, 449 Fed.Appx. 484, 487 (6th Cir. 2011)).

14

(4:20CV1207)

Plaintiff makes a new argument in the Memorandum in Opposition about a purported request to accommodate that is inconsistent with the Addendum (ECF No. 29-6 at PageID #: 889) and her deposition testimony (ECF No. 37-5 at PageID #: 1529:6-1531:18, 1534:3-1537:13): "When Susan was engaged with Ms. Antonaccio in the telephone conference that evening [of June 12, 2018], she was in essence seeking a reasonable accommodation . . . ." ECF No. 32 at PageID #: 930. Glowe now maintains that "[h]er request (albeit, perhaps, more of a demand than a request) to leave on June 12 as a result of her hyperglycemic event amounted to an attempt to make a request/demand for a reasonable accommodation." ECF No. 32 at PageID #: 933. This new theory appears intended only to avoid the dispositive fact that Plaintiff failed to make any request for a reasonable accommodation in the Addendum (ECF No. 29-6 at PageID #: 889); and it is unsupported by the facts and the law.

"To prevail on a failure-to-accommodate claim under the ADA, an employee must show that [s]he *actually requested* an accommodation." *Green v. BakeMark USA, LLC*, 683 Fed.Appx. 486, 493 (6th Cir. 2017) (citing *Johnson v. Cleveland City Sch. Dist.*, 443 Fed.Appx. 974, 982-83 (6th Cir. 2011)) (emphasis added). "The employer is not required to speculate as to the extent of . . . the employee's need or desire for an accommodation." *Id.* at 494 (quoting *Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042, 1046-47 (6th Cir. 1998)). The record in the case at bar reflects that Plaintiff never requested/demanded permission to leave her shift; rather, she simply walked out. ECF No. 29-5; ECF No. 37-2 at PageID #: 1224:18-1226:4; 1239:17-1240:9. Plaintiff has testified: "I have an unclear recollection of what was said in that conversation." ECF No. 37-5 at PageID #: 1487:8-9. *See Bass*, 2014 WL 5516473, at *7

15

(4:20CV1207)

("Plaintiff cannot defeat summary judgment merely by alleging that [s]he cannot recall events and discipline that explain the basis for the actions Defendant took.").

Plaintiff fails to demonstrate any factual basis to conclude that she actually requested a reasonable accommodation or that Defendant improperly rejected any such request. Therefore, summary judgment must be granted on Plaintiff's failure to accommodate claims.

### C. Claim for Failure to Engage in an Interactive Process

Plaintiff's claim that Defendant failed to engage in an interactive process is focused on Mercy's refusal to rescind her discipline. "[O]nce Mercy was given notice that her disability may have been the cause [of her misconduct], they should have engaged in the interactive process and reconsidered their disciplinary action in light of what she would have told them about what can happen to her when she is in a serious hypoglycemic state." ECF No. 32 at PageID #: 932. This argument fails as a matter of law because, as stated in Section IV.A., Mercy was not required to rescind the discipline.

Plaintiff also asserts in conclusory fashion that "there remains the question of the failure to discuss through the interactive process her shift issues in light of her demotion to a staff nurse position." ECF No. 32 at PageID #: 933. There is no dispute, however, that she never requested any accommodation with respect to her "shift situation" or "demotion to a staff nurse position." All Glowe stated in her Addendum was that "the shift situation into which you have now placed me might at times render me unsafe for patients and myself; that needs to change." ECF No. 29-6 at PageID #: 889. Plaintiff did not identify or request anything that she did not already enjoy as a condition of her employment or that Defendant rejected. In addition, as explained

16

(4:20CV1207)

above in Section IV.B., Glowe does not rebut Defendant's arguments that Plaintiff's third purported request was not a request for a reasonable accommodation, so this issue is now waived, abandoned, and conceded. *See, e.g.*, *Santo's Italian Café LLC v. Acuity Ins. Co.*, 508 F. Supp.3d 186, 207 (N.D. Ohio 2020) ("It is well understood . . . that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.") (quoting *Lewis v. Cleveland Clinic Found.*, No. 1:12CV3003, 2013 WL 6199592, at *4 (N.D. Ohio Nov. 27, 2013)).

Plaintiff does not dispute that a "failure to engage in the interactive process is only an independent violation of the ADA if the plaintiff establishes a prima facie showing that [s]he proposed a reasonable accommodation," and that the claim fails as a matter of law when the plaintiff fails to propose a reasonable accommodation. *Swank v. CareSource Mgmt. Grp. Corp.*, 657 Fed.Appx. 458, 467 (6th Cir. 2016) (quoting *Rorrer v. City of Stow*, 743 F.3d 1025, 1041 (6th Cir. 2014) (citations omitted). She also does not dispute that shortly after she submitted the Addendum (ECF No. 29-6 at PageID #: 889) that set forth the three purported requests for accommodations to Defendant, she voluntarily went on medical leave and then resigned from Mercy and never returned to her position, such that she was responsible for any breakdown in the process.

Plaintiff's claim for failure to engage in an interactive process fails as a matter of law because Glowe fails to demonstrate she requested a reasonable accommodation and does not otherwise dispute that any breakdown in the interactive process was her fault. Therefore,

17

(4:20CV1207)

summary judgment must be granted on Plaintiff's failure to engage in an interactive process claim.

### D. Retaliation Claim

Plaintiff offers no opposition to Defendant's arguments that her retaliation claim fails as a matter of law because she did not engage in any protected activity and a failure to accommodate categorically is not retaliation. *See* ECF No. 32.[6] Because Plaintiff failed to meet her burden in opposing summary judgment on the retaliation claim, Plaintiff has abandoned these claims and waived any argument concerning dismissal of such claims. *Brown*, 545 Fed.Appx. at 372 (citing *Hicks*, 449 Fed.Appx. at 487)).

### V. Conclusion

Viewing Plaintiff's probative evidence and all reasonable inferences drawn therefrom in the light most favorable to Plaintiff, the Court concludes that there is no genuine issue of material fact and the movant is entitled to a judgment as a matter of law. For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 29) is granted. Final judgment will be entered in favor of Defendant and against Plaintiff on the Amended Complaint (ECF No. 23).

---

[6] The pre-filing written exchange required by ¶ 16 of the Case Management Plan (ECF No. 19 at PageID #: 132) should have obviated the need for the Court's attention to be drawn to unopposed arguments.

(4:20CV1207)

Plaintiff's counsel is ordered to redact and refile ECF No. 35-11 no later than April 4, 2022 at 4:00 p.m.  *See* n. 2, *supra*.

IT IS SO ORDERED.

   March 31, 2022        */s/ Benita Y. Pearson*   
Date      Benita Y. Pearson
    United States District Judge

19